**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AUTUMN D. N.,**

      **Plaintiff,**

v.

                                    **Civil Action 2:21-cv-4087
Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Autumn D. N., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

On June 18, 2019, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning March 29, 2019, due to Lyme disease and anxiety. (R. at 280-284, 302.) Those applications were denied initially on September 13, 2019, and upon reconsideration on January 3, 2020. (R. at 143-196.) Thereafter, Plaintiff filed a written request for a hearing on February 20, 2020. (R. at 219-20.) Plaintiff, who was represented by counsel, appeared and

testified at a telephonic administrative hearing held on November 3, 2020. (R. at 122-142.) A vocational expert ("VE") also appeared and testified. (*Id.*) Administrative law judge Jerry Meade (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on February 4, 2021. (R. at 102-121.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.)

On August 4, 2021, Plaintiff timely filed the subject action. (ECF No. 1.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony as follows:

> [Plaintiff] testified that she has panic attacks on a regular basis. She takes the medication Wellbutrin to control her mental impairments. When she has a panic attack[,] she has trouble breathing, she cries, has nausea and she shakes. When she worked three twelves, she would have a panic attack every time. Even now, she does not like to leave the house. She only leaves the house to go to the doctor. She may go out three to four times in a month but the rest of the time, she is at the house. Many times[,] due to her depression, she cannot get out of bed. Her depression is constant and she cries a lot. She stays in her room and eats her meals in her room isolated from the rest of her family. Her neighbor may come over to check on her. Her mom comes to visit her three to four days a week. Her daughter and granddaughter live with her so they check on her daily. Sometimes she does not feel like getting out of bed. She does not have the energy she used to have.

(R. at 111.)

## III. MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's mental impairments[1] as follows:

---

[1] Plaintiff's Statement of Errors raises arguments about only the ALJ's treatment of the evidence relating to her mental impairments. Accordingly, the Court will set forth only the facts relevant to Plaintiff's arguments.

2

[Plaintiff] was seen for anxiety at Hopewell Health Centers in July of 2019. She noted she had always had anxiety but it had become worse in the last year. On examination, she was restless through the session. Her mood was anxious and her affect was appropriate. Her thought processes were logical and she was cooperative but restless. She was oriented to person, place and time and her judgment and insight was good. She was diagnosed with generalized anxiety disorder and counseling was recommended.

[Plaintiff] had an examination by Dr. Regina McKinney in August of 2019. On examination, she appeared depressed and cried excessively during the interview. She endorsed feelings of anxiety, which included panic attacks, which was comprised of an increased heart rate, shortness of breath, trembling, dizziness and nausea. In reference to her depression, she felt social withdrawal, crying spells, poor attention and concentration skills and low motivation. On examination, she was cooperative and rapport was adequately established. She appeared both anxious and depressed and was fidgety and shaky. She understood the purpose of the examination and did not exaggerate or minimize her difficulties. Her thought processes were clear and logical and she was oriented to person, place and time. She recalled six digits forward, four digits backwards, and three out of three words after a five-minute delay. She could not complete the serial seven tasks, but did correctly perform serial threes. She could perform simple mathematical equations and her judgment and insight were sufficient. She was diagnosed with panic disorder and unspecified depressive disorder.

She had a normal mental examination at Hopewell Health Centers in September of 2019 but she was anxious during the session. She did report she was trying to get out of the house more and went to the Apple Festival, although she ended up having a panic attack. As she talked during the session, she became less anxious and more comfortable. She was diagnosed with generalized anxiety disorder.

[Plaintiff] has received therapy from Adena Counseling starting in December of 2019 for her mood disorder, anxiety, and panic disorder with agoraphobia. However the majority of her mental examinations have been normal with the exception of her mood and affect, which were, often anxious or depressed. In February of 2020, it was noted she had not received formal counseling for her mental impairments in about a year and her primary care physician had been monitoring her psychotropic medication. She noted her anxiety had become worse because she was having panic attacks almost daily and isolated herself because she was afraid to leave the house. She had anxiety with driving or going to the grocery store. She noted her anxiety was manageable when she was at home. However, she did note after taking Effexor her depression became better and she was able to get out of bed. On examination, she was cooperative and pleasant but did appear distraught. She had extreme psychomotor agitation noted consistent with anxiety and was tremulous through the entire appointment. Her attention and concentration [were] good and her immediate, recent and remote memory were intact on examination. She was oriented in all spheres and her affect was at full range where

3

> she was dysthymic, extremely anxious, labial and her mood was congruent. Her insight was fair, her judgment good and her thought process was logical, linear organized and intact. She denied suicidal and homicidal ideation. She was diagnosed with mood disorder, anxiety and panic attacks.
>
> Later in February at Adena Counseling, she indicated she had relief from her anxiety with Valium and she was taking it as needed. She agreed she would benefit from taking it once a day and then again if she left the house. She was diagnosed with mood disorder, anxiety and panic disorder. In July of 2020 on examination at Adena Regional Medical Center, it was noted that her anxiety and depression was stable and she was doing well on her current medication. The remainder of her mental examinations in the record in August of October of 2020 were normal with the exception of her mood, which was anxious.

(R. at 112-113 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

The ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on February 4, 2021. (R. at 102-121.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (R. at 107.) Next, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

has not engaged in substantial gainful activity since March 29, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the severe impairments of obesity, degenerative disc disease of the cervical spine, mood disorder, anxiety disorder and panic disorder with agoraphobia. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She can occasionally climb ladders, ropes and scaffolds. She can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. She must avoid concentrated exposure to hazards such as moving machinery and unprotected heights. She can understand, remember and carry out detailed and simple instructions. She is limited to low-stress jobs (defined as jobs that have only occasional changes in the work setting and do not have fast-paced tasks with strict production quotas). She can have no public contact, but can have occasional contact with co-workers and supervisors.

(R. at 110.) At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a licensed practical nurse. (R. at 116.) Relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 116-17.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since March 29, 2019. (R. at 117.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

5

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ's RFC is inconsistent with the opinion of Dr. Regina McKinney, a psychiatric consultative examiner whose opinion the ALJ found to be "persuasive because it [was] well supported and is consistent with the overall

6

evidence of record." (ECF No. 11 at PAGEID ## 619-621.) Plaintiff argues that the ALJ's RFC is therefore "not based on substantial evidence as it is inconsistent with the consultative examination that the ALJ found persuasive, as well as the record as a whole," and submits that the ALJ's error is harmful because "the incorporation of the limitations opined by Dr. McKinney would support a finding of disability." (*Id.*) For the reasons discussed below, the Undersigned finds that Plaintiff's arguments are not well taken.

As a preliminary matter, Plaintiff is correct that upon reviewing Dr. McKinney's opinion, the ALJ found it to be persuasive:

> In August 2019, Dr. McKinney (a consultative examiner) opined [that] [Plaintiff] could understand remember and carry out instructions. She noted [Plaintiff's] attention and concentration skills were marginally adequate but may deteriorate over extended time periods slowing her performance in completing simple repetitive tasks. Anxiety would likely interfere with her focus while depressive symptomology may contribute to a slowed work pace. She may have difficulty in responding appropriately to supervision and to coworkers in a work setting. Exposure to day-to-day work stress could lead to increased frequency of panic attacks. It could also lead to increased depressive symptomatology and a slowed work performance and poor frustration tolerance. **This opinion is persuasive because it is well supported and it is consistent with the overall evidence of record.** [Plaintiff] has received counseling for her mood disorder, anxiety and depression from Adena Counseling. Treatment notes indicate [Plaintiff] was often anxious and fidgety upon examination. Finally, [Plaintiff] said she has an aversion to being in public.

(R. at 114 (internal citations omitted; emphasis added).) At first glance, one may assume that Plaintiff is also correct that the ALJ "indicate[d] no rationale for omitting these limitations from the RFC," given how abrupt the ALJ's discussion of Dr. McKinney's opinion is. (*See* ECF No. 17 at PAGEID # 646.) But upon review of the ALJ's decision in its entirety, it becomes clear that the ALJ clearly explained where, and why, his RFC differed from Dr. McKinney's opinion.

For example, Plaintiff argues that the ALJ contradicted Dr. McKinney's opinion that Plaintiff's anxiety "would likely interfere with her focus while [her] depressive symptomology

7

may contribute to a slowed work pace," but the ALJ expressly discussed why he found that Plaintiff would be able to understand, remember, and carry out detailed and simple instructions, contrary to Dr. McKinney's opinion:

> With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. [Plaintiff] noted she had trouble concentrating. On examination, she was oriented to person, place and time. She accurately completed serial threes. She could complete simple mathematical equations. She could not complete serial sevens. [Plaintiff] testified she had trouble concentrating if she was depressed or anxious.
>
> \*\*\*
>
> [Plaintiff's] attention and concentration was good and her immediate, recent and remote memory were intact on examination. She was oriented in all spheres and her affect was at full range where she was dysthymic, extremely anxious, labial and her mood was congruent. Her insight was fair, her judgment good and her thought process was logical, linear organized and intact.
>
> \*\*\*
>
> [T]he evidence of record clearly shows [Plaintiff] does not have a marked impairment in concentration. For example, Dr. Joyce Jadwin (a psychologist) noted that [Plaintiff's] attention and concentration were "good" during numerous appointments in September 2020 and October 2020.

(R. at 110, 113, 115 (internal citations omitted).) Additionally, the ALJ noted that "[i]n July of 2020 on examination at Adena Regional Medical Center, it was noted that her anxiety and depression was stable and she was doing well on her current medication," which directly reconciles – without being inconsistent with – Dr. McKinney's opinion that Plaintiff's anxiety would "interfere" with Plaintiff's ability to work. (R. at 113.)

Next, Plaintiff notes the ALJ's conclusion that Plaintiff "could have occasional contact with co-workers and supervisors," which Plaintiff argues is "inconsistent with Dr. McKinney's opinion noting that she would have difficulty responding appropriately to others in a work setting given her social withdraw[al] and avoidance behaviors." (ECF No. 11 at PAGEID ## 619-620.)

8

A closer review of Dr. McKinney's opinion, however, reveals that Dr. McKinney did not opine regarding Plaintiff's ability to interact with others in a work setting. (*See* R. at 430-436.) Specifically, when asked to "[d]escribe [Plaintiff's] abilities and limitations in responding appropriately to supervision and to coworkers in a work setting," Dr. McKinney indicated as follows:

> While [Plaintiff] was cooperative during the evaluation, she also appeared anxious and depressed. She cried excessively during the interview. She described social withdrawal and avoidance behaviors.

(R. at 434.) This undercuts Plaintiff's argument on its face, but the Undersigned also notes that the ALJ cited substantial evidence from the record to support the conclusion that Plaintiff "can have no public contact, but can have occasional contact with co-workers and supervisors." (R. at 110.) Specifically, the ALJ cited that Plaintiff is able to get along with her "two children, her six-month-old granddaughter and a family friend along with his girlfriend," but also "did not like to leave her house because she was scared to be in public." (R. at 109.) The ALJ also cited the "persuasive" opinion of the State agency consultative examiner at the reconsideration level, who indicated that Plaintiff "would be limited to brief and superficial contact with co-workers and supervisors" with "no contact with the public." (R. at 114 (citing 167-194).)

Finally, Plaintiff argues that the ALJ's RFC " does not make any allowances for absences, despite Dr. McKinney's opinion that the stress of a day-to-day workplace setting could lead to increased frequency of Ms. Nettles' panic attacks and depressive symptoms and the indication that she previously left work early due to feeling overwhelmed." (ECF No. 11 at PAGEID # 620.) While it is true that Dr. McKinney suggested that exposure to day-to-day work stress ***could*** lead to increased frequency of panic attacks, this non-specific and non-definitive language does not call for deference from the ALJ. *Boykin-Sullivan v. Comm'r of Soc. Sec.*, No.

2:19-CV-4115, 2020 WL 2896915, at *4 (S.D. Ohio June 2, 2020) ("These statements do not provide the ALJ with definitive limitations to incorporate into the RFC.") (citing *Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion.")). The ALJ therefore did not err in failing to include this non-definitive limitation in Plaintiff's RFC. *Earley v. Comm'r of Soc. Sec.*, No. 2:19-CV-53, 2019 WL 4894039, at *7 (S.D. Ohio Oct. 4, 2019), *report and recommendation adopted*, No. 2:19-CV-53, 2020 WL 1080417 (S.D. Ohio Mar. 6, 2020) ("[T]he ALJ did not err in failing to include these non-definitive limitations in Plaintiff's RFC.").

The Undersigned emphasizes that the relevant question is not whether the ALJ could have adopted Dr. McKinney's opinion in its entirety, but rather whether the ALJ's RFC was supported by substantial evidence. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). And to be clear, ALJs are not "required to incorporate the entirety of [an] opinion into an RFC." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). "Indeed, 'an RFC determination is a legal decision rather than a

medical one, and the development of a claimant's RFC is solely within the province of an ALJ.'" *Borgan v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-6166, 2022 WL 109346, at *6 (S.D. Ohio Jan. 12, 2022) (quoting 20 C.F.R. §§ 404.1527(e), 405.1546). Therefore, notwithstanding the fact that the ALJ found Dr. McKinney's opinion to be "persuasive as a whole," the ALJ was not required to incorporate any specific portions of Dr. McKinney's opinion into the RFC.

While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his RFC determination, and the ALJ's explanation enjoys substantial support in the record. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")). Because the ALJ clearly explained the bases for his RFC determination and supported that analysis with substantial evidence, the Undersigned defers to the ALJ's decision. Accordingly, Plaintiff's assignment of error is not well taken.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   July 14, 2022                                  /s/ *Elizabeth A. Preston Deavers*
                                                                                Elizabeth A. Preston Deavers
                                                                                United States Magistrate Judge